## James C. Jensen, Defendant in Error, v. Wells & Company, Plaintiff in Error.

### Gen. No. 16,829.

CORPORATIONS—*when liable for fraud of servants.* Where employees of a corporation advertised as a "Museum of Anatomy," having "doctors and specialists in all kinds" of certain diseases, represented themselves as such physicians and specialists and fraudulently induced plaintiff to believe that he was suffering from a certain disease, thereby obtaining money from him for supposed treatment and medicine, and the corporation availed itself of such fraud and retained the benefit, the corporation is presumed by law to have authorized and ratified the acts of its servants and cannot claim immunity on the ground that the fraud was perpetrated by its servants and not by the corporation.

Error to the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed January 27, 1913.

SAMUELS & SAMUELS, for plaintiff in error.

JOHN T. DONAHOE, for defendant in error; ENOCH HARPOLE, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

In an action of the fourth class, for a tort, in the Municipal Court, brought by Jensen against Dr. Wells & Co., a corporation, the statement of plaintiff's claim was that the defendant, by its servants and employees, falsely and fraudulently represented to plaintiff that he was afflicted with "partial paralysis of the seminal ducts, loss of semen;" that he paid defendant $425 for the treatment and cure of said alleged disease when in fact he was not afflicted with said disease.

The defendant maintained in Chicago a "Museum of Anatomy," and therein distributed cards bearing the words, "Specialists, Diseases of Men Only." On the window was the sign, "Dr. Wells & Co., Doctors and Specialists in all Kinds of Men's Diseases."

The plaintiff went to defendant's place of business February 26, 1909, and was given a pamphlet purporting to have been published by defendant, entitled "Secrets of True Manhood," in which was the statement, "We cure  *  *  *  all diseases and weaknesses of men due to evil habits, etc.  *  *  *  Call or write. Dr. Wells & Co." Plaintiff called again at the Museum March 9, and was met by a man who said that he was Dr. F. P. Little, a doctor there, who wrote the name "F. P. Little" on one of defendant's business cards and gave it to the plaintiff. He made an examination, told the plaintiff that he had partial paralysis of the seminal ducts and loss of semen, and said it would cost one hundred dollars to have it cured. Plaintiff paid Little $40 and March 23 and March 26 made two further payments of $30 each. April 14 defendant wrote plaintiff asking him, "to call on us before further prescribing in your case." May 2

plaintiff again called at the museum and was met by a man calling himself "A. Slaughter," who gave him one of defendant's cards on which he wrote the name "A. Slaughter." Slaughter told him that Little was on a vacation and he was there to take his place. He made an examination, told plaintiff he was in a pretty bad shape and wanted $150 to cure the condition in which he then was. The defendant sent ten parcels of medicine to plaintiff, each C. O. D. $6.50, which he received and paid for. Defendant again wrote plaintiff, asking him to call. He called November 26 and met a man whose name he did not know, who made an examination and told him that only "organic phosphates" would cure him, and that would cost him $175. Plaintiff paid him $100 on account and received from him a "consultation card," on the back of which was noted the payment of $100. He was also given by the same man medicine, for which he paid him $12.50. Two days later he went back and was told by the same man that he did not believe in "organic phosphates" and was given a battery. Some days afterward plaintiff went to the museum and found another "doctor" there, who told him that the doctor whom he last saw had gone to Kansas City. The new doctor wanted to treat plaintiff, but he refused to permit him to do so. The defendant did not call Little, Slaughter or the doctor who treated the plaintiff in November, but produced an affidavit in support of a motion for a continuance, which stated that one Coates would testify that he was the physician in charge of the defendant company; that plaintiff presented himself for treatment March 21 and that at no time was there any such term used as is alleged in plaintiff's statement of claim. Plaintiff admitted that Coates would so testify, but testified that he did not see any doctor by the name of Coates. Plaintiff called as witnesses two doctors, who testified that they examined the plaintiff in April or May, 1910, and from such examination believed that plaintiff did not suffer between March 7

and December 1, 1909, from paralysis of the seminal ducts and loss of semen.

We do not think that the court erred in admitting the letter signed "Dr. Wells & Co." or evidence of the acts and statements of "doctors" Little and Slaughter and of the other two "doctors" who saw plaintiff in November at defendant's place of business. The defendant held out to the public that it had at its museum, "doctors and specialists in all kinds of men's diseases;" that it cured "by the best of medical ability" certain diseases; to plaintiff's letters addressed to Little and Slaughter he received answers signed "Dr. Wells & Co.;" Little named the price of $100 for curing plaintiff; defendant put in evidence a letter of plaintiff dated March 25, addressed to Little, beginning as follows: "Inclosed find $30 balance due you as per agreement," and plaintiff put in evidence a letter signed "Dr. Wells & Co.," dated March 24, asking him to remit the balance of $30 due on his contract and a receipt for $30 for professional services, dated March 26, signed "Dr. Wells & Co., F. P. L." Defendant also put in evidence the following letter of plaintiff dated May 4, addressed to A. Slaughter: "Inclosed find draft for $100 as per agreement," and plaintiff put in evidence a letter dated May 7, signed Dr. Wells & Co., beginning as follows: "Your letter with draft for $100 enclosed received."

We think that from the evidence the jury might properly find that Little made to plaintiff the statement that plaintiff testified he made, and that such statement was false and fraudulent and was relied on by the plaintiff; that the subsequent acts of the defendant and its employees were in pursuance of a plan to cheat and defraud plaintiff; that the defendant, having availed itself of the wrongful and fraudulent acts of its servants, the law presumes it authorized them; that the defendant cannot be permitted to enjoy the fruits of the fraud perpetrated by its servants without adopting all the instrumentalities employed by

them in perpetrating such fraud; that the defendant ratified the acts of its servants and retains the benefit of the transactions with the plaintiff, and cannot claim immunity on the ground that the fraud was perpetrated by its servants and not by the corporation.

We do not think that the language of counsel for the plaintiff in their arguments to the jury was such as to require a reversal of the judgment.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*